IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| JESSICA LAROQUE | ) | CASE NO. |
| | ) | |
| Plaintiff, | ) | JUDGE: |
| | ) | |
| v. | ) | **COMPLAINT** |
| | ) | |
| AMERICAN AXLE & MANUFACTURING, INC. | ) | **(Jury demand endorsed herein)** |
| | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff Jessica LaRoque, by and through undersigned counsel, as her Complaint against Defendant American Axle & Manufacturing, Inc., states and avers the following:

## NATURE OF THE CLAIMS.

1. This is an action to redress Defendant's unlawful failure to hire LaRoque because of race in violation of Title VII, 42 U.S.C. § 1981, and Michigan Compiled Laws § 37.2202(1)(a).

## PARTIES.

2. LaRoque is an individual residing in Oakland County, Michigan.

3. Defendant American Axle & Manufacturing, Inc., is a Delaware corporation whose principal place of business is located in Wayne County, Michigan. American Axle can be served at 1 Dauch Dr., Detroit Michigan, 48211 and upon its registered agent, The Corporation Company, at 40600 Ann Arbor Road E., Ste 201, Plymouth, Michigan, 48170.

## PERSONAL JURISDICTION.

4. Defendant hires citizens of the state of Michigan, contracts with companies in Michigan, and owns or rents property in Michigan. As such, the exercise of personal jurisdiction over Defendant comports with due process.

1

5. The hiring process for the position LaRoque applied for occurred in this district and the decision not to hire LaRoque was made and implemented in this district.

6. The exercise of personal jurisdiction over Defendant accords with Michigan's long-arm statute and due process because this action arises from and relates to Defendant's contacts with this district.

## SUBJECT MATTER JURISDICTION AND VENUE.

7. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises under Title VII and 42 U.S.C. § 1981.

8. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over LaRoque's Michigan Elliott-Larsen Civil Rights Act claim under Michigan Compiled Laws § 37.2202(1)(a) because that claim forms part of the same case or controversy.

9. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district.

## ADMINISTRATIVE PROCESS.

10. Prior to instituting this action, LaRoque filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 471-2024-07553, alleging that Defendant had failed to hire her because of her race.

11. The EEOC issued LaRoque a Notice of Right to Sue on August 1, 2025.

12. LaRoque has filed this action within 90 days of receiving her Notice of Right to Sue.

13. LaRoque has properly exhausted her administrative remedies prior to initiating this action.

14. Any and all other prerequisites to the filing of this suit have been met.

**FACTUAL ALLEGATIONS.**

15. Defendant designs, engineers, and manufactures automotive driveline, electric propulsion, and metal forming systems and conducts employee recruiting operations in the Eastern District of Michigan.

16. LaRoque is Caucasian.

17. In or around September of 2024, Defendant posted a Talent Acquisition Partner – Early Career position online, seeking qualified applicants.

18. The Talent Acquisition Partner – Early Career position required a minimum of three years of recruitment experience using recruiting tools and technology.

19. The Talent Acquisition Partner – Early Career position required at least one year of experience leading early-career projects and events.

20. LaRoque submitted her application for the Talent Acquisition Partner – Early Career position on September 16, 2024 ("Application").

21. At the time she submitted her Application, LaRoque held a SHRM-CP credential.

22. At the time she submitted her Application, LaRoque possessed more than five years of campus recruiting and full-cycle recruiting experience.

23. At the time she submitted her Application, LaRoque's experience included planning and managing recruiting projects.

24. At the time she submitted her Application, LaRoque's experience included use of Workday Applicant Tracking System, Handshake, LinkedIn, and comparable recruiting platforms.

25. At the time she submitted her Application, LaRoque had more than five years of leading early-career recruiting projects and events.

26. Prior to submitting her Application, LaRoque had participated in Defendant's Co-op Program from 2013-2016, providing her with tenure with the company.

27. LaRoque met and exceeded every qualification stated in the Posting.

28. Subsequently, Defendant interviewed LaRoque for the Talent Acquisition Partner – Early Career position.

29. Defendant also interviewed KeeJanae Moore and Sarah Burguess for the Talent Acquisition Partner – Early Career position.

30. Moore is African American.

31. Burguess is Caucasian.

32. Hiring Manager Lyndsey Ferqueron served as the hiring manager for the Talent Acquisition Partner – Early Career position.

33. Interviewer Julie Sharobeem and Interviewer Eliza Wiseman evaluated candidates and provided feedback to Ferqueron.

34. Corporate Recruiter Matt Balaze worked within Defendant's Talent Acquisition team during the hiring process.

35. Balaze encouraged LaRoque to apply before she submitted her Application.

36. Balaze worked within Defendant's recruiting team and was familiar with the role and the applicant pool.

37. Balaze told LaRoque that Defendant was seeking a candidate who had led early-career recruiting projects and events – qualifications LaRoque possessed.

38. Balaze was not a decision maker when it came to making the final hiring decision for the Talent Acquisition Partner – Early Career position.

39. Ferqueron served as the final decision maker, supported by Sharobeem and Wiseman.

40. Ferqueron, Sharobeem, and Wiseman conducted the interviews and made the hiring decision.

41. Defendant rejected LaRoque and Burguess for the Talent Acquisition Partner – Early Career position on or about September 26, 2024.

42. Defendant hired Moore for the Talent Acquisition Partner – Early Career position instead.

43. Moore lacked three years of full-cycle recruiting experience, while LaRoque had more than five years of full-cycle and campus recruiting.

44. Moore lacked at least one year leading early-career recruiting projects and events, while LaRoque led such projects and events for more than five years.

45. Moore performed primarily administrative and support functions, while LaRoque owned requisitions end-to-end including sourcing, screening, interviewing, selection, and offer management.

46. Unlike LaRoque, Moore did not have 3 years full cycle recruiting experience or early career experience.

47. Moore lacked demonstrated proficiency with Workday ATS, Handshake, and LinkedIn Recruiter, while LaRoque used those platforms in daily work.

48. Moore lacked metrics reflecting pipeline, time-to-fill, and offer acceptance, while LaRoque documented metrics-driven outcomes for employers including General Motors, Raytheon, and Plastipak.

49. Moore held no professional human-resources certification, while LaRoque held the SHRM-CP credential.

50. Moore lacked ownership of campus partnerships and university engagement strategy, while LaRoque led campus recruiting initiatives consistent with the Posting's early-career focus.

51. Moore did not own requisitions across multiple functions, while LaRoque owned full-cycle requisitions across business units.

52. Moore did not administer or optimize recruiting technology, while LaRoque administered and used Workday ATS, Handshake, and LinkedIn Recruiter.

53. Moore did not conduct hiring-manager intake and slate presentations at scale, while LaRoque conducted intake sessions, slate reviews, and offer processes.

54. Moore's internal familiarity with Defendant arose from a short-tenure co-op role, while LaRoque combined a multi-year co-op with Defendant from 2013 to 2016 and subsequent external corporate recruiting experience.

55. Moore did not meet the Posting's three-year recruiting experience minimum, while LaRoque exceeded every objective qualification in the Posting.

56. Moore lacked experience planning and executing high-volume early-talent events, while LaRoque planned and executed high-volume campus events.

57. Moore did not use Handshake to manage campus pipelines and event logistics, while LaRoque used Handshake to manage pipelines and events.

58. Upon information and belief, Burgess also had substantially more relevant experience than Moore.

59. Defendant selected Moore over LaRoque and Burguess because of their race, Caucasian, and not because of qualifications, experience, performance, or any other objective, legitimate, non-discriminatory reason.

60. As a direct and proximate cause of Defendant's conduct, LaRoque suffered and will continue to suffer damages.

## COUNT I: RACE DISCRIMINATION (FAILURE TO HIRE) IN VIOLATION OF TITLE VII

61. LaRoque re-alleges and incorporates by reference the allegations set forth in paragraphs 1-53, above.

62. LaRoque is a member of a statutorily protected class based on her race.

63. Defendant intentionally refused to hire LaRoque because of race and selected Moore, who did not meet the posted minimum qualifications, for pretextual reasons unrelated to merit, business necessity, or any legitimate non-discriminatory criterion.

64. Defendant discriminated against LaRoque on the basis of race when it rejected her application, despite her superior qualifications, in order to hire an African American candidate who was objectively less qualified.

65. Defendant's conduct constitutes unlawful race discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2(a).

66. As a direct and proximate result of Defendant's discriminatory refusal to hire her, LaRoque has been denied employment opportunities providing substantial compensation and benefits.

67. As a further direct and proximate result of Defendant's conduct, LaRoque has suffered and continues to suffer emotional distress, mental anguish, humiliation, embarrassment, anxiety, and loss of self-esteem.

68. Defendant acted with malice or reckless indifference to LaRoque's federally protected rights, thereby entitling her to punitive damages.

69. To remedy Defendant's violations of Title VII, 42 U.S.C. § 2000e-2(a), LaRoque requests that the Court award her the relief set forth below.

## COUNT II: RACE DISCRIMINATION (FAILURE TO HIRE) IN VIOLATION OF 42 U.S.C § 1981

70. LaRoque re-alleges and incorporates by reference the allegations set forth in paragraphs 1-53, above.

71. Section 1981 guarantees all persons the same right to make and enforce contracts.

72. LaRoque sought to enter an employment contract with Defendant for the Talent Acquisition Partner – Early Career position.

73. On or about September 26, 2024, Defendant refused to contract with LaRoque and selected Moore instead.

74. Defendant chose Moore over LaRoque solely on the basis of her race, and not for any legitimate, non-discriminatory reason.

75. At the time of the hiring decision, LaRoque met and exceeded the posted minimum qualifications and Moore did not.

76. Defendant intentionally refused to contract with LaRoque because of race and not for any objective, legitimate, non-discriminatory reason.

77. Race was the but-for cause of Defendant's refusal to hire LaRoque.

78. As a direct and proximate result of Defendant's conduct, LaRoque has been denied employment opportunities providing substantial compensation and benefits.

79. As a further direct and proximate result of Defendant's conduct, LaRoque has suffered and continues to suffer emotional distress, mental anguish, humiliation, embarrassment, anxiety, and loss of self-esteem.

80. Defendant acted with malice or reckless indifference to LaRoque's federally protected rights, thereby entitling her to punitive damages.

81. To remedy Defendant's violations of rights secured to LaRoque by 42 U.S.C. § 1981, LaRoque requests that the Court award her the relief set forth below.

### COUNT III: RACE DISCRIMINATION (FAILURE TO HIRE) IN VIOLATION OF MICHIGAN ELLIOTT–LARSEN CIVIL RIGHTS ACT, MCL § 37.2202(1)(A)

82. LaRoque re-alleges and incorporates by reference the allegations set forth in paragraphs 1-53, above.

83. Defendant intentionally refused to hire LaRoque because of race and selected Moore, who did not meet the posted minimum qualifications, for pretextual reasons unrelated to merit, business necessity, or any legitimate non-discriminatory criterion.

84. Defendant's conduct constitutes unlawful race discrimination in violation of Michigan Compiled Laws § 37.2202(1)(a).

85. As a direct and proximate result of Defendant's discriminatory refusal to hire her, LaRoque has been denied employment opportunities providing substantial compensation and benefits.

86. As a further direct and proximate result of Defendant's conduct, LaRoque has suffered and continues to suffer emotional distress, mental anguish, humiliation, embarrassment, anxiety, and loss of self-esteem.

87. To remedy Defendant's violations of Michigan law, LaRoque requests that the Court award the injunctive, equitable, compensatory, and exemplary relief set forth below.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Jessica LaRoque requests judgment in her favor against Defendant American Axle & Manufacturing, Inc. containing the following relief:

(a) An order instating LaRoque to the position she would have occupied but for Defendant's discriminatory treatment, with full seniority and benefits, or, if instatement is not feasible, awarding front pay in lieu of instatement, and requiring such affirmative action as is necessary to eliminate the effects of the unlawful practices and ensure they do not continue to affect LaRoque;

(b) An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate LaRoque for all monetary and/or economic damages, including, but not limited

     to, the loss of past and future income, wages, compensation, job security and other benefits of employment;

(c) Awarding against each Defendant compensatory and monetary damages to compensate LaRoque for lost wages, emotional distress, and other consequential damages, in an amount to be proven at trial;

(d) An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate LaRoque for all non-monetary and/or compensatory damages, including, but not limited to, compensation for his mental anguish and emotional distress, humiliation, depression, embarrassment, stress and anxiety, loss of self-esteem, self-confidence and personal dignity, and emotional pain and suffering and any other physical or mental injuries;

(e) An award of damages for any and all other monetary and/or non-monetary losses suffered by LaRoque in an amount to be determined at trial, plus prejudgment interest;

(f) An award of punitive damages;

(g) An award of costs that LaRoque has incurred in this action, as well as LaRoque's reasonable attorneys' fees to the fullest extent permitted by law; and

(h) Awarding such other and further relief that this Court deems necessary and proper.

Respectfully submitted,

*/s/ Chris P. Wido*
Chris P. Wido (Ohio #0090441)
*Admitted to E.D. Michigan*
**SPITZ, THE EMPLOYEE'S LAW FIRM**
3 Summit Park Drive, Suite 200
Beachwood, OH 44122
Phone: (216) 364-1330
Fax:    (216) 291-5744
Email: chris.wido@spitzlawfirm.com

*Attorney for Plaintiff Jessica LaRoque*

## JURY DEMAND

Plaintiff Jessica LaRoque demands a trial by jury by the maximum number of jurors permitted.

*/s/ Chris P. Wido*
Chris P. Wido (Ohio# 0090441)
**SPITZ, THE EMPLOYEE'S LAW FIRM**